Case number 25-5254. Amica Center for Immigrant Rights et al. Appellants. United States Department of Justice et al. Ms. Sturgis for the appellants. Mr. Gender for the appellants. Good morning, counsel. Ms. Sturgis, please proceed when you're ready. Thank you, your honor. Good morning, your honors. May it please the court. Laura Sturgis on behalf of appellants. There are many reasons why this case should be remanded, and I'd like to start with the one that underlies them all, and I think may be the easiest way to resolve this appeal. The government's after-the-fact, contradictory, and self-serving declarations made in the course of litigation should not have been considered, and particularly not for the purpose considered by the district court and for the purpose advanced by the government for the first time on appeal. That somehow that those declarations demonstrate a reason, a decision to insource, or that it turns plaintiff's claims from January somehow into a challenge to insource long-standing, universally lauded, congressionally required programs that make our immigration system more efficient and fair. If we reach the merits of the arbitrary and capricious argument, your point has a lot of force, but I don't see how this bears on, say, the threshold question of whether your claims are contractual or not for Tucker Act jurisdiction purposes. Would you like me to answer the Tucker Act questions then and address that merits issue? We do not think that's... Well, I'm just saying the point you want to front load about considering extra record evidence doesn't seem to me to bear on the threshold issues. So the district court applied 1491B of the Tucker Act, the procurement leg of the Tucker Act, to find that we didn't have jurisdiction and we should be in the court of federal claims. That only can stand if you find that there was actually a decision to insource the programs that we were challenging. And if you look at the administrative record, and even if you look within the four quarters of the declarations themselves, it is clear that plaintiffs were not challenging a decision to insource. And in fact, there was no decision to insource at the time the termination was made throughout the course of... Why is that? I mean, your clients are subcontractors. They were receiving federal money. Now they're not receiving federal money. Whether the bar runs through procurement or through the provision about claims founded on contract, either way, it's a claim-seeking contract. Let me address that issue. And if I may, I'll go back to why I think the declarations matter here. But our plaintiffs are longstanding providers of these services, and in fact, provided these services decades before Congress chose to pass an appropriation statute requiring the executive agencies to fund these programs. And so we are not simply subcontractors receiving money. We're actually organizations that have built their entire business model, their entire mission around delivering these services. And it was the United States government and Congress who decided these are important and valuable services. We want to ensure that our immigration system has these services, and we're going to do that through longstanding appropriations. And so we have been relying on the ability to deliver those services, to deliver our services to detained noncitizens, and to ensure that we can continue to work on our missions. I mean, that's all fine, but the appropriations are operationalized through contracts. That's right. And subcontracts. That's right. And so because they are operationalized through a contract or subcontract, the danger is that the executive agency could avoid any kind of judicial review for any kind of action if it were able to throw up the shield of a contract as a mechanism for delivering its required obligations under an appropriation statute. Well, that might seem like a danger from the perspective of the plaintiffs here, but I mean, that's the scheme that's contemplated by Congress through the Tucker Act and the carve-outs of the APA for contractual issues, then that just is what it is. That is what it is. And here, we think that the reason that this is very different is because we're not challenging the termination of the contract. We're challenging the termination of the programs. And so we're challenging the appropriation statute, which says services and activities of the Legal Orientation Program, not less than $28 million, shall be spent on services and activities of the Legal Orientation Program. And that has not happened. Why would these organizations, these providers, have standing to challenge that, to challenge how the Department of Justice chooses to implement these policies? So back to an answer I gave to your colleague, I believe that our organizations, which are longstanding providers of these services, have actually developed the program at issue. They have standing because their entire business model, their entire mission is centered around delivering these services that Congress then said, these are the services we want to see funded. So that might give standing to challenge the contract terminations, but why does it give standing to challenge how the government is administering the programs? We're challenging the failure to administer the programs. But you're challenging how they are administering or, as you say, failing to administer. It's the same thing. You're suggesting that the Department of Justice is not fulfilling its statutory obligations, but why would the providers of that have standing? Where's the injury? So the injury is in the very direct and perceptible impact on our organizational mission, our ability to conduct our business activities. And we are mission-driven to provide these services. We have done so long before Congress appropriated the funds for this and created the requirement on the executive to deliver these programs. And we have done so in reliance on private funding, and now we have done so in reliance on federal funding. But regardless of the funding source, what we have done so in reliance on the ability to deliver these services in detention centers, at immigration courts, and since the termination of the programs, we have not been able to do so. Is there anything in the statute that requires the government to outsource these services? There's nothing in the appropriation statute that specifically says. For any statute? So there's no obligation for the government to outsource, is there? There is. I would argue that there is a strong indication that Congress intends for these programs to be outsourced. That's not an issue, I think, before this court or on this appeal, but I think there is a strong indication that Congress intended for these services to be provided by... But your injury, the fact that you are unable to get government funding for this, the injury that you just claimed, depends on a prior legal conclusion that outsourcing is required. If there's no legal obligation to outsource, then again, I'm not sure where these providers have an So I think it's not the lack of funding that is our injury. That is a outcome of the termination, but it is the interference of our ability to deliver these services and the fact that these services are not being delivered and that we have the inability to go in and deliver them since program termination. So that's not the theory of standing on which the district court decided you have standing? Correct. The district court focused on the fact that you were opportunity to compete. That's right. And so going back... Do you not think you have standing on that basis or why is that not part of your argument? The reason why it's not part of our argument here is because we don't think that that specifically relied upon finding that we were challenging an insourcing of a federalized program here. And we don't think that was in the record. We don't think that is happening. And that should not be a basis for finding that we have standing or not because we're not here to complain about the opportunity to compete for procurement. This is just simply not a procurement setting at all. You're avoiding that theory because it cinches up standing for you, but it runs you right into the Tucker Act. So what is your best theory of injury that does not depend on the money and access and privileges that come from being a government subcontractor? So our organizations, let's take Florence Project. It was one of the very first organizations to start these programs. And it developed its organization, its staffing, its programming based on its ability to deliver particularized services to detain non-citizens. After years of doing so and doing so very well, Congress said, this looks like a great program. This is helping our immigration courts and we like what it's doing. Let's have a pilot program and then eventually let's put this as part of our congressional appropriation. And since 2003, Congress has authorized money every year for this particular program. And they're doing all of that through government contracts. Say that again? They're doing all of that. All of those great things that you say they've been doing for 20 years, they've been doing through government contracts. They've been doing it through government contracts. Regardless of whether they terminate a contract or not, though, there is still an APA right of review of agency action. Behind that contract is the agency action to terminate those programs. If the government actually were delivering services and were providing the services and activities of the Legal Orientation Program, this would be a different case. But that's not the case before you. The case before you is that these services have been terminated, the activities have been terminated, and our organizations who have been providing these activities and services and activities for years are unable to do so. They have had to... The district court here found that there was no termination. And that was a factual finding by the district court. I don't know... Why is that clearly erroneous? I don't think there was a factual finding that there was termination, but I do think that there was a reliance upon the after-the-fact declaration that actually... Part of the problem in a number of these suits is that there's new administration comes into office, and they're looking at programs to change. And then a lawsuit is brought within days of the new administration coming into office. And then there's changing facts on the ground. And I think the district court properly took into account that this was an evolving situation. Why was that error? So, I think that that was not error if the purpose of evaluating the changing circumstances on the ground was going toward what the actual agency action was at the time. That's where we requested discovery. And that's where we said we have the opportunity to test the in-court statements, the in-litigation statements made only in response to our motion for summary judgment to find out if that is true, especially where that statement was in particular contrast to the same declarant statement in the administrative record. That declarant statement said it is made only for purposes of a motion for summary judgment. That statement in court, the U.S. attorney said, is only made for purposes of the impoundment issues and was not anything reflecting the actual decision at the time. And then for the court to say that was the decision that was made and the plaintiffs are challenging, we think is error. Can I ask, the appropriation law says not less than $28 million shall be available for services and activities provided by the Legal Orientation Program. And your claim at the end of the day on the merits is whatever is going on, it's not the Legal Orientation Program. The services provided by the Legal Orientation Program are not actually being provided. That's, I think, at the essence. Correct. And so, as I understand it from prior exchange with Judge Rau earlier, you're not saying that what the law means is that the services are provided by the Legal Orientation Program that has to be provided by an outside contractor. We are not saying that. You're not saying that. So, in theory, the services could be provided internally. In theory. In theory, meaning the theory of your claim. I'm trying to give you the benefit of your ear. Thank you, sir. Okay. So, I'm just saying, so for purposes of your claim, you're not saying the law, when it discusses services provided by the Legal Orientation Program, it doesn't mean to say that has to be by an outside entity. The law allows for the possibility that it's done by the government itself. I think the law would allow for that to be conducted by the government itself under the same standards that any agency action would be evaluated, that there was a reasonable basis and it wasn't arbitrary and capricious, and that it was meeting the language of the appropriation. And then what is something, but for this is true for both of your sides, both your side and the government side. I think everybody agrees that services and activities provided by Legal Orientation Program means something. It's a limiting principle. You can't just provide something that has nothing to do with these services at all and call it services and activities provided by Legal Orientation Program. On the other hand, I take it you wouldn't say that the exact services provided at a specific site by a specific contractor is bound up in the statute. And if you don't do that, then you violated the statutory contemplation that $28 million shall be available for services and activities. So what's your principle for drawing the line? What is it that's essential to being the services and activities provided by the Legal Orientation Program so we don't get down to that level of detail? We're already past that it has to be done by an outside entity. It can be done internally. If we're past that, then what is it that says that as a statutory matter, this just isn't the services and activities provided by the Legal Orientation Program? In order for that to happen, it would have to be... So not only do we have the history, the long history of decades of what the services look like to look for, and even if we're not looking at the very specific what's happening in a particular detention center on a particular day, we certainly know that services and activities of the Legal Orientation Program, at least as of 2019, the last time we have the appropriation statute that used that language. What was going on was the Legal Orientation Program providing in-person, one-on-one individual information to detain non-citizens, the Legal Orientation Program for custodians, providing that for the custodians of unaccompanied minors, and the Immigration Help Desk happening at immigration courthouses to provide information for detained non-citizens. So those three general programs are the services and activities of the Legal Orientation Program. How those are delivered and how those may look day-to-day certainly change, and in fact, we've seen during COVID some of the way those services were delivered had to change. In fact, Congress said back to in-person, it's much more effective to have them in-person, but we've seen them evolve. We've seen them develop. Do you think the statute requires in-person, the appropriations law requires in-person? I don't think the appropriations law requires in-person. And that is your claim. Your claim ultimately is about what the appropriation law requires. Yes. Because that's how you get to, that's your theory about how you avoid making it a contract claim, is that we're just talking about what the law requires, and what the law requires independently of any contract claim is this. And so it doesn't have to be in-person. What does it have to be? Effective, right? They have to be effective. They have to be delivering these services to detained non-citizens in a meaningful way. And that's the language from 2003, from when the, even before that, with the pilot program, the purpose of the services and activities of the legal orientation program are certainly to make the immigration courts more efficient and to provide information, provide the modicum of due process, the very bare minimum of due process for detained non-citizens going through the immigration system. So at root, it gets to whether these are effectively, that's the nub of your argument, is that what the statute contemplates is it has to be effectively providing the services. And if it's not effectively providing the services based on various contextual considerations, then it's a violation of the appropriation law. Well, I understand your questions. And I guess I would say that rather than putting a point on where the line is drawn, I'd like to say they're not happening here. And I think it's very clear. Or if they are, that's why this is not appropriate for this court to decide. And this is a factual issue that should be before the district court. There has no, there's been no evidence that there is some services happening and where that line should be drawn. There is only a clear indication that the federal government decided to terminate these programs and then in the course of litigation decided to claim insourcing and only on appeal, not even at the district court, say that that insourcing was actually a decision at the time. But I don't want to cut off your question. If you want to push on where that line is, I would just say that we have not had need to evaluate whether what is happening actually would meet the requirements of the statute, because we would say nothing is happening. And it's clear that the services and activities of the legal orientation program are not occurring. Thank you. You're trying very skillfully to frame this as a shutdown case. And we've had a fair amount of experience the last few months with shutdown cases. Just off the top of my head, you can think of two kinds of plaintiffs whom we've let into court for shutdown claims. One is in the CFPB case consumers of agency services. And another in the Voice of America cases at the stay stage, it was contractors who were specifically mentioned, but by name in the earmark. You have neither of those features, which seems to make things pretty difficult for you. Is there any? What's your closest case for a contractor or subcontractor getting to litigate the shutdown case? Well, I would say I think it's two different issues, right? The first issue is standing. And I think the standing here is clear. And I think that even the district court acknowledged that they're standing here by even putting aside- I mean, it's both. In my mind, it's both. It's both. Your open and shut theory for standing runs you into the Tucker Act. You have standing as a subcontractor, no question about that. I think we have standing as a pre-existing provider of these services, as an organization whose missions were to deliver these services and whose missions now have been thwarted by government action. And I think that is exactly the case in Hippocratic Medicine that said these kinds of organizations still have standing when you have a direct and perceptible impact on business operations because of government action. And it is not only through our status as subcontractor, but it is through our status as providers of these services. Thank you. Make sure my colleagues don't have additional questions at this point. We'll give you some time for rebuttal. Thank you, your honors. Janda. Good morning, your honor. May it please the court. Sean Janda for the federal government. I think it's helpful to start, as the district court did, by being very clear about the specific agency actions that are being challenged in this case. And I take there to be sort of two different specific actions. So first is the termination of the various task orders under the ACACIA contract. And then second is the way the agency is providing legal orientation services on an ongoing basis. And sort of separating them apart in that way, I think it's pretty clear to see why each fails as the district court held. I mean, so when talking about the contract terminations, I think there are two independent barriers in section 1491 that make clear that any decision or any claim challenging the termination of those task orders, if it can be brought at all, has to be brought in the court of federal claims. And then taking the contract termination off the table, if what you're left with is just a challenge to the way the agency is continuing to provide services to beneficiaries today, there's just a sort of this is the wrong claim to bring that they don't have standing to challenge this sort of ongoing agency action that doesn't affect the organizational plaintiffs, that doesn't directly regulate the organizational plaintiffs, once you take the contract piece of it off the table. And so I think... Can I ask you that I don't know where this fits within your framework of having two boxes, but suppose what the agency says is we're not going to do the legal orientation program anymore. We're still going to do some services in this area. We're going to do some stuff. But it's just not going to be the legal orientation program anymore. And I know your argument, obviously, we will resist that hypo, but it's just a hypo. So if that were the predicate against which we were litigating this case, would you still have your 1491 arguments? So I think so. It's certainly... Well, let me say, number one, I think you have to isolate the actual agency action, not just sort of the amorphous determination or decision. And so to the extent that the action that's being challenged is the termination of particular contractual instruments, then challenges to that action have to go... Right. So let's suppose that's how they implement it. So they say, we're not going to do this legal orientation program anymore. We're not going to abandon everything associated with it. I mean, we'll do some stuff internally to make sure that these proceedings aren't an entire sham, but we're not going to give the full robust array of stuff that's bound up in what we consider the legal orientation program. We get that there's going to be a challenge to that, that it's in violation of the appropriations law. We think we can withstand that. We can impound. I mean, there's just things that are not on the table here, but let's just assume this for purposes of just elucidating what's bound up in your 1491 argument. And so that's the nature of the claim. And then somebody comes in and says, the appropriations law requires that you do this program. You're just not doing the program anymore. And then they say, the agency says, the way we're going to implement that is, of course, we're going to get rid of the contracts. We've got to terminate the contracts because we're not doing the program anymore. So that's exactly part of what is being done. The final agency action, you can say, it's eliminated the contracts as informed by the edict that we're not going to do this program anymore. Would it still be, would you still say, well, that's a Tucker Act? It has to go to the court of claims. I think if the final agency action that's being challenged is the termination of the contractual instruments, then you're in the court of federal claims. If someone came in and said, take the termination of the contracts off the table. I'm a beneficiary of these services, and you're just not providing them at all right now. And I think the statute entitles me to this particular service. And however you do it, you have to provide it. I think that claim might well proceed in district court. And that person might well have standing to raise that sort of claim. And the problem here is that these organizations are not the beneficiaries of these services. And so once you take the contract termination issue off the table, there's just nothing left to their cognizable or addressable in this case. And so whatever might happen in a different suit brought by someone who thinks that services that they're entitled to aren't being provided, that's just not the claim that these plaintiffs get. So then it just goes to standing. I mean, it just seems to me that conceptually, it has to be the case that if the agency decides that the programs, we're just not going to do the program anymore. And yeah, part of the way we're going to do that is get rid of the contracts. There's all kinds of things we need to do to disband the program, but we're just not going to do it anymore. We'll continue to do some stuff in-house that services in the area, but we acknowledge that it's not the program anymore. Then there is definitely a challenge to that that is not going to the court of claims. Who the party is that should bring that challenge might be an issue, but you don't dispute that there is a challenge to that decision, the web of decisions that results in that state of affairs that's challengeable outside of the court of claims. Yeah, I mean, I do think the court really has to be careful. I mean, again, court doesn't review sort of webs of decisions. It reviews specific actions. And so when you're talking about the contract termination, that's the court of federal claims. If there is a separate challenge, if someone says, you know, these services aren't being provided at all, and I'm a beneficiary, and I don't care about contracts, but I'm a beneficiary, that person might well have standing. And they may well be able to plead a sort of statutory contrary to law, sort of for 761 type claim. They could proceed in district court, but that's just not, these just aren't the right plans. Well, all I'm saying by web of decisions is not that someone's challenging the web of decisions. All I'm saying is that decision might well be implemented by terminating the contracts, but you don't have to challenge the termination of the contracts. You can challenge the decision not to have the contracts. You can challenge the decision that just says, you're just not doing the program anymore. You've decided you're not doing the program anymore. And yes, you implemented that by getting rid of the contracts, but you decided not doing that anymore. And then it's a question of whether who's the right person to bring that challenge. I take it that's what your point is, is if that's the challenge, if it's not about the termination of the contract per se, even though the termination of the contract is the way that it's implemented, it has to be in order to actually have an effective, you know, termination of the program as opposed to the termination of a contract. It has to be implemented to terminate the contracts. That kind of challenge can still be brought, but it has to be somebody other than the plaintiffs here. Yeah, I think just the court would really need to focus on the particular agency action as sort of the district court here did. And I think there are sort of multiple agency actions that are being wrapped together in this case, and sort of the challenges fail for different reasons. But you could certainly imagine a case where someone, say a beneficiary of the services, brings a challenge predicated sort of entirely on the statute, and we haven't argued in this case that sort of that challenge will be. Mr. Janda, can I ask you maybe a somewhat related question, which is, is the termination of a government contract or, Pierre, the termination of a grant an agency action within the meaning of the APA at all? I mean, is a contract termination, a government contract termination an agency action under the APA? So we haven't briefed that issue or looked at it. I mean, the definition of agency action is in the APA is pretty capacious, but we haven't sort of raised any argument about that. I know, but I'm interested in the government's thought about that. To my knowledge, I don't know if we have developed a position on that, so I certainly wouldn't want to get ahead of my skis on that question. I think it would be very hard to imagine, particularly in these sorts of circumstances, a challenge to a contract termination that could proceed in district court. I mean, to the extent that what you're really trying to do is restore your contract, I think the Supreme Court has made clear, this Court has made clear that that's a claim that has to go to the Court of Federal Claims. And then would the Court of Federal Claims review it under the APA for whether it was reasonable, arbitrary, and capricious? Is that even susceptible, whether in district court or in the Court of Federal Claims, to APA review at all? I don't think the Court of Federal Claims would apply the APA as such. So if you bring a contract termination action under 1491A in the Court of Federal Claims, you are bringing a breach of contract claim, not an APA claim. And, you know, the extent to which a reasoned explanation is required is sort of a question of federal contract law. And the Court of Federal Claims will apply those federal contract standards. So maybe the Tucker Act is inconsistent with thinking about a grant termination as an agency action. Because once you go to the Court of Federal Claims, then the APA is not applicable. Yeah, I mean, I think the clear import of the Tucker Act and its limitations on review is that Congress wanted contract terminations to be challengeable as contract terminations, as breach of contract claims in actions for damages in the Court of Federal Claims, not challengeable under the APA. And sort of whether they get there by sort of whether you get there by saying that the APA excludes contract terminations from its definition of agency action, or just by saying that this whole scheme sort of impliedly crowds out the APA, I'm not sure it matters that much. The one sort of caveat to that answer is that 1491B, which applies or which provides the basis for jurisdiction over a challenge to certain procurement-related decisions, which we think applies in this case, actually does incorporate APA standards of review to those procurement decisions. And so, and for injunctive and declaratory relief is available in those claims. And so, if you're bringing a 1491B claim, I think it looks a little bit more like an APA claim, although perhaps adjusted for the particular context of procurement and government contracting. If you're bringing a 1491A claim in the Court of Federal Claims, that's just a breach of contract claim. What is a 1491, in this context, the 1491B action that would go forward in the Court of Claims? Is it the same action? So, it's, I think, different in at least one respect, which is that, as we said in our brief, the En banc Federal Circuit just held, I mean, I think the day before we filed our brief, that subcontractors cannot bring 1491B claims in the Court of Federal Claims. So, these particular plaintiffs could not bring a 1491B claim in the Court of Federal Claims. If the prime contractor brought a 1491B claim, then that would be a claim that is reviewed, 1491B says, sort of according to the standards laid out in the APA. And so, we cite this IMPRESA case in our brief, which is a 1491B case in the Federal Circuit. And I think that case goes through how that standard of review is applied in the particular context of procurement decisions. So, go to the Court of Claims because it's related to a procurement under your theory, but then the Court of Claims analysis would be exactly the same analysis that any APA court would conduct in the kind of garden variety stuff that we do here. I mean, 1491B says that in reviewing a 1491B claim, the Court of Federal Claims applies the standards set forth in the APA. I think the Court of Federal Claims application of those standards is certainly informed by the procurement context and by the broad discretion that agencies have in the procurement context to switch suppliers to insource to terminate procurement contracts. So, I don't want to say it would look exactly the same as a sort of garden variety APA suit in district court in a different context. I mean, I think you'd be arguing here that there's a lot of discretion associated with those kinds of decisions too, right? So, I'm not sure it looks all that different. I mean, you might be right that 1491B shunts the claim to the Court of Claims. I'm just not sure what the actual difference is. It's just a venue. It just goes forward in a different venue. I mean, I think 1491B arose because before 1491B was enacted, district courts in the Court of Federal Claims were both exercising concurrent jurisdiction over procurement-related suits and Congress just wanted to centralize review of procurement disputes in one court. So, I think a 1491A claim probably looks a lot different from an APA claim. A 1491B claim I think is going to look a lot more similar to an APA claim. There may be, again, some differences in how the APA standard is applied given the particular context. So, you think what happened is that Congress thought that the initially these claims could be brought in either form. And then there's the statute that says that, okay, these procurement-related claims are going to be brought only in the Court of Claims. And then the idea is that if you're not within the compass of 1491B, then you can't bring it in either, like the subcontractors. Right. I mean, I think what we'd say is that 1491B, by providing a particular reticulated scheme exclusively in the Court of Federal Claims for this category of suits challenging procurement decisions, Congress has at least impliedly precluded district court jurisdiction even over sort of suits that don't fall within the specific branch of jurisdiction, for example, suits brought by subcontractors. I mean, the same way this Court has said that the Tucker Act might give you a damages remedy for a breach of contract claim has impliedly precluded your ability to go to district court and seek a specific performance or injunctive or declaratory relief on a contract, at the points that Congress has made decisions about the limitations that these sorts of suits even bring a claim at all. And so not what you can get in your claim. And so your theory is that a subcontractor who, by hypothesis, has Article III standing, so at least has a requisite degree of interest to satisfy that criterion, still is not an interested party for purposes of 1491B. So they can't come into district court, even though they have standing. They can't go to the Court of Claims because they're a subcontractor, so they're out of luck. I mean, I think they can't bring a 1491B claim in the Court of Federal Claims. And Congress, by restricting 1491B review to interested parties, the Federal Circuit just held what was trying to exclude subcontractors from the ability to bring a 1491B claim. And so I think- They would obviously say they're not bringing a 1491B claim. They're trying to bring a claim that doesn't have anything to do with 1491B. But you would say, well, you have to be seen as bringing a 1491B claim because it has something to do with procurement. I mean, yes. And I think it falls squarely within the language of 1491B, the sorts of claims that it covers. And I think it would be exceedingly strange to think that Congress, who was trying to centralize all review of procurement-related decisions in the Court of Federal Claims, would have allowed subcontractors to bring those claims in district court. I mean, it would sort of entirely disrupt the scheme that Congress enacted trying to move those claims to the Court of Federal Claims and very much out of district court where they had been heard before 1996. And they haven't raised any argument in this case that they can get out of 1491B on that basis. So I don't think this Court needs to consider that. The district court seemed to distinguish for jurisdictional purposes between a termination and an insourcing. And I'm hustling over that a little bit. Why would it matter? You're a subcontractor. You're getting money from the government. And situation number one, they say, we're not going to fund you anymore. And oh, by the way, we're just not going to fund anything. Situation number two, they say, we're not going to fund you anymore. And by the way, we're going to just do this thing in-house. Why is that? Why would that matter for purposes of whether that's the subcontractor either has standing or has to go to the Court of Federal Claims? Seems like the injury is the same. Yeah, we don't think that matters. Certainly not for 1491B purposes. I think, in our view, they are alleging violations of statutes in connection with the procurement. And that's true regardless of whether the... Was the district court wrong to reach the merits on the, what was it, the ICH claim? Yes. I mean, I think in our view that the whole suit is precluded as a matter either of 1491A or 1491B, or as a matter of standing, sort of separated out. And just to sort of highlight on that, I do think that that means, or one sort of consequence of that is that the court doesn't need to consider the declarations to reach that result. So to the extent that there's any uncertainty about whether the declarations are properly considered, even on the jurisdictional piece of things, I think the court could disregard them and just say, regardless of what comes after procurement contract termination, it is swept into 1491B. Can I ask you on standing? So if we think that somebody could bring the claim because you're not challenging the termination of the contracts, but you're challenging at the threshold whether there's been an elimination of the program, and there was a decision to eliminate the program, and that's what's being challenged, then what's your response to the theory of standing you heard earlier, which is that this is essential to what we do, it's core to what we do, and therefore, elimination of the program has the kind of theory of injury that suffices under Hippocratic and that line of... Yes, I think if you take the contract termination piece off the table, and so you assume for the moment that they're not getting money as a result, they're not getting funds, then it's a dispute about sort of how well or poorly the government is providing services to third parties, and there's just no cognizable interest. I mean, that's sort of I think exactly what Alliance says is that when the government is acting with respect to third parties, they are not the plaintiff, just because the plaintiff alleges kind of a mission-based interest in those third parties receiving particular services or being acted on in a particular way, and even if the plaintiff says, you know, I'm going to choose to spend my own resources to step into the gap to provide what I think ought to be provided, that's not a cognizable theory of standing. Instead, I mean, the person who has standing in that instance is the beneficiary of the services who thinks that they're not being provided proper services or appropriate services, not the third party that has kind of this mission-based interest in other people receiving services from the government, and I think that flows directly from Alliance's rejection of that kind of diversion of resources theory of standing. My colleagues, I have additional questions for you. Thank you. Thank you, Mr. Janda. Ms. Sturgis, we'll give you three minutes for the rebuttal. Thank you, Your Honors. My colleague started with saying, you know, let's be clear what the agency action is here, and I think that's one of the biggest reasons why this case should be remanded to the district court because it is far from clear, at least according to the government's perspective, what the agency action is. We actually do think it's very clear from the administrative record that the agency action was determination of these programs, the decision to stop providing these programs, but the district court's order and the government's argument on appeal is now that Director Owen's declaration coming in the context of litigation somehow changes that agency action, and we think that in and of itself is reason to go back to the district court. If you isolate that agency action, there's only one way to define this case, and that is that the agency action was determination and not some kind of phantom insourcing that comes only in the context of litigation. In terms of who can bring a claim to challenge this termination, appreciating my colleague's explanation that a beneficiary of these services could bring a claim, and I don't want to argue in hypotheticals, but a beneficiary, a detained noncitizen, can only bring claims for due process violations in immigration court, and so there's a reason why you don't see beneficiaries bringing claims against agency actions like this here, and as you also heard, we could not bring a 1491B claim in the Court of Federal Claims because of our status as a subcontractor. I will say I think that is a red herring anyway. It doesn't matter that we're a subcontractor or not here. It doesn't matter. This just is not a 1491B case. There is no violation of our procurement statute. The APA review of agency action through a reading of 1491B saying that any claim of a violation of any statute somehow becomes procurement related if it ends up at the termination of a contract, and that just can't be. It's certainly not how any court has ever interpreted 1491B. There's nothing here that the appellants are claiming was a violation of anything related to procurement, of anything related to even the contract. There is no part of the contract that would be at issue or need to be resolved by any court. It is not a case for 1491B, nor is it a case for 1491A, and quickly on the standing part, I want to be clear that the impact is not only to providing the Legal Orientation Program services and activities, including LOP, LOPC, and ICH, including impacting all the services that our providers have been designed and created to provide, that because they are not able to provide these program services, all the additional programs and services and activities that they have been providing have been impacted, and that is the type of organizational impact that Hippocratic Medicine has recognized and upheld and suffices for standing here. And I also remind the Court that the Court of Federal Claims simply cannot give injunctive relief, even if putting aside the issue that the U.S. Attorney recognized that we couldn't bring a 1491B or a 1491A claim in the Court of Federal Claims. We are not looking for damages. Giving us money now does not solve our problem, which has been that every day we are unable to provide the services that our organizations have been designed to provide, and $28 million a year for the services and activities of the immigration or of the Legal Orientation Program can't be held into the end of the year and then paid out, and suddenly you've met your obligations. That has to have meaning in some way, and what we are looking for is the executive agency to meet its obligation under the Appropriations Statute to spend $28 million in the furtherance of services and activities of the Legal Orientation Program. Can I just ask you one question? So on your point that under the government's 1491B theory, it would cover a broad array of situations because it would basically cover every situation in which the government would choose to eliminate a program. So the district court did it differently because the district court said that, as I understand it, the parts as to which the government opted to do it in-house rather than outsourcing, that's a procurement-related decision per Fisher et al., but the parts where there's an elimination, that's not, and so I'm going to do something different with that. Whatever you think about that dichotomy, that at least would not result in the sweeping implications. That approach would not result in the sweeping implications that you're raising a it wouldn't cover that all program eliminations. It would only cover, 1491B then would only cover a substitution of in-house for outsourcing. Correct, and I would also say that it reads almost as broadly as the government's argument because all it does is force the government to say, well, we're not just terminating the contract, we're insourcing, but that insourcing is not subject to any kind of review, and so it leaves that agency action completely removed from agency review under the APA as well. It's not quite as broad as the government, but I think that the fair reading of the district court's opinion here is broader than 1491B has ever been intended to apply. There's just no procurement-related statute. As the court knows, Fisher et al. involved the failure to do a cost analysis under a procurement statute. That was the dispute that implicated 1491B. Here, there is just the idea that a declaration by Saoirse Owen in May of this litigation in response to a summary judgment motion suddenly became the basis for our challenge and suddenly kicked us out of court then just isn't, it's not borne out by the facts, it's not borne out by the and this would be a very poor case to stake a claim on 1491B. Thank you, counsel. Thank you to both counsel. We'll take this case under submission.
judges: Srinivasan; Katsas; Rao